IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PHILLIP A. HENDRICK                                                                PLAINTIFF

V.                                                        CIVIL ACTION NO.: 1:16-cv-204-SA-DAS

ITT ENGINEERED VALVES, LLC                                                  DEFENDANT

MEMORANDUM OPINION

This matter arises on Defendant's Motion for Summary Judgment, wherein it argues that Plaintiff's claims under the whistleblower protection provisions of the Sarbanes-Oxley Act (SOX) should be dismissed.

*Facts and Procedural History*

Phillip Hendrick began working for ITT around July 2013 as the Operational Excellence Manager in its Amory, Mississippi facility. Beginning in 2014, and as part of his job duties, Hendrick instituted employee surveys to measure employee morale in an attempt to improve productivity. Hendrick claims that after instituting the surveys, he began to feel ostracized by other Amory managers, namely Dennis Jackson, Mike Steele, and David Flippo.

In September of 2015, ITT began to respond to a declining business by considering termination of certain employees. According to ITT, Hendrick was one such employee. On September 7, 2015, Hendrick sent Mike Sutter, then Vice President and General Manager of Industrial Products for ITT, an email recognizing that he may be included in a reduction in force. He sent a similar email Fred Vos, the General Manager and Executive Director. In both emails, he attempted to shield himself from termination. He offered to take Fridays off to reduce expense on the company.

Later that month, Hendrick claims that he observed fraudulent inventory moves of raw plate steel, which he documented by taking photographs. Hendrick claims that he provided these photographs to a coworker, Steve Shirley. Shirley accessed the inventory tracking system and saw that the steel had been removed from the system, suggesting an intent to create absorption. Shirley then submitted the photos to ITT along with an anonymous ethics complaint describing the nature of the matter as "inventory manipulation to 'cook the books.'" ITT began its investigation on October 14, and its reports noted that the reporter had been informed by a co-worker of the supposed violation, but the investigation was purportedly anonymous.

On that same day, three hours after the report was filed, Vos informed Hendrick of a new restructuring plan that would remove Hendrick from the umbrella of corporate management and into local Amory management. Hendrick saw this as a demotion. Also on October 14, Hendrick emailed Sutter regarding the inventory moves. He said that he "was led to believe that the financials are smoke and mirrors." He expressed dissatisfaction with what he perceived as the ethical violation of falsely expensing material as though it had been used and "fudging" the numbers. Sutter advised Hendrick to report the moves to Amory managers.

Hendrick and Shirley were both terminated from ITT in January 2016. ITT cited reduction in force as its reason for the layoffs, but Hendrick believes that he was terminated because he reported fraudulent activity to Sutter and through Shirley's anonymous ethics complaint. Hendrick alleges that such retaliation constitutes a violation of the whistleblower protection provisions of the Sarbanes-Oxley Act, codified as 18 U.S.C. § 1514A(a)(1)(c).

*Summary Judgment Standard*

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when the evidence reveals no genuine dispute regarding any material fact and the

moving party is entitled to judgment as a matter of law. The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "set forth 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Importantly, conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Analysis and Discussion*

Plaintiff's anti-retaliation claim arises under § 806 of the Sarbanes-Oxley Act, codified at 18 U.S.C. § 1514A, which "creates a private cause of action for employees of publicly-traded companies who are retaliated against for engaging in certain protected activity." *Allen v. Admin. Review Bd.*, 514 F.3d 468, 475-76 (5th Cir. 2008). The Fifth Circuit recognizes that "[n]o [public company] may discharge, demote, suspend, threaten, harass, or in any other manner discriminate

against an employee in the terms and conditions of employment because of [certain protected whistleblowing activity]" under the Act. *Halliburton, Inc. v. Admin. Review Bd.*, 771 F.3d 254, 258–59 (5th Cir. 2014) (changes in original). To prevail on an anti-retaliation claim under this provision, the employee must prove, by a preponderance of the evidence, that (1) he engaged in protected whistleblowing activity, (2) the employer knew that he engaged in the protected activity, (3) he suffered an "adverse action," and (4) the protected activity was a "contributing factor" in the "adverse action." *Allen*, 514 F.3d at 475-76.

To qualify as a protected activity, an employee's complaint must definitively and specifically relate to an instance of what he reasonably believes to be mail fraud, wire fraud, bank fraud, securities fraud, a violation of any rule or regulation of the SEC, or a violation of any provision of federal law relating to fraud against shareholders. *Id.* at 476–77. Upon an employee's showing of the four required elements under § 1514A, an employer may still avoid liability by showing with clear and convincing evidence that it would have taken the unfavorable personnel action regardless of the employee's protected activity. *Id.* at 476; 49 U.S.C. § 42121(b)(2)(B)(iv).

Defendant argues that Plaintiff cannot meet the first element because he did not identify the fraudulent activity with sufficient particularity. The Administrative Review Board (ARB) at one time required employee's communications to be related "definitively and specifically to the subject matter of the particular statute under which protection is afforded." *See Platone v. FLYI, Inc.*, ARB Case No. 04–154, 2006 WL 3246910, at *8 (ARB Sept. 29, 2006). The Fifth Circuit adopted this standard in 2008. The ARB has since reconsidered the issue and interpreted SOX not to require that the communication definitively and specifically relate to one of the six SOX categories. *Sylvester v. Parexel Int'l LLC*, ARB No. 07–123, 2011 WL 2517148, at *14–15

(ARB May 25, 2011). The Fifth Circuit has not reconsidered the standard, but it has quoted *Sylvester's* statement that SOX's "critical focus is on whether the employee *reported conduct* that he or she *reasonably believes* constituted a violation of federal law." *Villanueva v. U.S. Dep't of Labor*, 743 F.3d 103, 109 (5th Cir. 2014) ("An employee need not cite a code section he believes was violated in his communications to his employer, but the employee's communications must identify the specific conduct that the employee believes to be illegal"); *see also Wallace v. Tesoro Corp.*, 796 F.3d 468, 479 (5th Cir. 2015). However, the Fifth Circuit has made clear that a party is not required to plead with particularity in accordance with Rule 9(b) of the Federal Rules of Civil Procedure. *Id.* at 480; FED. R. CIV. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake" under 9(b)).

Turning to the court's "critical focus," whether or not Plaintiff reported conduct that he reasonably believed constituted a violation of federal law, in cases involving the sixth "catch-all" category, the employee must reasonably believe that his or her employer acted with a mental state embracing intent to deceive, manipulate, or defraud its shareholders. *Allen*, 514 F.3d at 479. An employee's reasonable belief must be scrutinized under both a subjective and objective standard. *Allen*, 514 F.3d at 477. Additionally, an employee's reasonable but mistaken belief that an employer engaged in conduct that constitutes a violation of one of the six enumerated categories is protected. *Id.* The objective reasonableness of an employee's belief cannot be decided as a matter of law if there is a genuine issue of material fact. *Allen*, 514 F.3d at 477.

Defendant argues that Plaintiff's reports never specifically accused ITT of any SOX violation, and that, because Plaintiff was unable to articulate fully his fraud claim in deposition testimony, his claim must fail under this element. Regarding his subjective belief, Plaintiff

responds that the movement of steel plates over ITT grounds and corresponding movement of inventory in ITT's computer system made him believe that fraud against the shareholders was occurring. He consulted with Shirley who reported that he suspected manipulation in an attempt to "cook the books." As to the objective standard, according to the incident report, Nancy Bridy, the ITT Controller, confirmed that the inventory had been transferred in an effort to create absorption, and she counseled the General Manager that it was not acceptable. She also spoke with other managers to ensure that the practice would not be repeated. Thus, other reasonable minds believed the activity to be questionable, at the least. Plaintiff has created a genuine issue of material fact that his fraud allegations were reasonable under both an objective and subjective standard.

Next, Plaintiff must show that ITT knew that he had engaged in the protected activity. It is uncontroverted that Sutter knew about Plaintiff's protected activity after he received Plaintiff's email complaining about the inventory moves. However, Defendant argues that Plaintiff cannot link Sutter's knowledge to the actors who purportedly decided to terminate him—Vos and Jackson. In response, Plaintiff points to an email from Vos, wherein he instructs Jackson to "coach" Plaintiff regarding "inappropriate behavior," including sending emails to colleagues "bad mouthing" Amory Management. Therefore, Plaintiff alleges that Vos and Jackson knew that Plaintiff had reported his findings to Sutter, and that the "bad mouthing" referenced the report of fraud. Furthermore, Shirley's complaint, although anonymous, stated that a co-worker told the reporter about the violations. Plaintiff had spoken to Human Resources Manager, Kathy Ray about inventory moves, and Plaintiff alleges that management could have easily inferred who the co-worker in question was based on Ray's knowledge. A question of fact remains as to whether Defendant knew Plaintiff had engaged in the protected behavior. Such factual disputes

should be reserved for the jury, for they amount to little more than credibility assessments. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge"). Thus, the Court turns to the third element under the rubric, whether Plaintiff actually suffered materially adverse actions.

Plaintiff argues that he suffered three separate materially adverse actions. *See Allen*, 514 F.3d at 476 n.2 (adopting standard requiring plaintiff to show that reasonable employee would have found challenged action materially adverse; in other words, it "well might have dissuaded a reasonable worker from [engaging in protected activity]") (citing *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53, 67-68, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)). First, Plaintiff argues that ITT relegated him to a lower position on its management chart less than three hours after Shirley filed his complaint. Second, he alleges that he received poor performance reviews from Jackson. Third, ITT terminated him approximately three months after he reported the alleged fraudulent moves.

Defendant counters that the restructuring did not result in a demotion, and that it planned Plaintiff's termination well before Shirley and Plaintiff reported the activity. The restructuring did not result in a change to Plaintiff's compensation, job title, or duties, but Plaintiff alleges that according to a corporate hierarchy chart, the restructuring placed him in an inferior position than his previous placement. Defendant does not respond to the accusation that Plaintiff received poor reviews, but the record is devoid of further information regarding the alleged reviews. One thing is clear: Plaintiff was terminated approximately three months after the report was made. Thus, for summary judgment purposes, Plaintiff has produced a *prima facie* case that the alleged demotion and termination were adverse actions. *See* 49 U.S.C. § 42121(a)(1); 49 U.S.C. §

42121(b)(2)(B) (Complainant must make a *prima facie* showing that protected behavior was contributing factor in the unfavorable personnel action alleged in the complaint); *see also Rayborn v. Bossier Par. Sch. Bd.*, No. 16-30903, 2018 WL 670489, at *4 (5th Cir. Feb. 2, 2018) ("To be the equivalent to a demotion, a transfer need not result in a decrease in pay, title, or grade; it can be a demotion if the new position proves objectively worse—such as being less prestigious or less interesting or providing less room for advancement.") (quoting *Thompson v. City of Waco*, 764 F.3d 500, 503 (5th Cir. 2014)). Thus, the Court moves to the final element, whether Plaintiff has produced evidence that the protected activity was a "contributing factor" in the "adverse action." *Allen*, 514 F.3d at 476 (citing 49 U.S.C. § 42121(b)(2)(B)(iii)).

Defendant asserts that Plaintiff's claims are not rational, because if Defendant "demoted" Plaintiff within three hours of the report, it would not have waited three more months to fire him if it had retaliatory motives. Defendant also alleges that Plaintiff suspected the real reason for his termination well before he was terminated. As of September 2015, Plaintiff was aware that the Amory facility faced economic decline, as indicated by his emails to Sutter and Vos, where he sought alternatives to being laid off, such as cutting his hours. In his September 16 email to Vos, he stated, "I have been laid off 3 times in my career . . . so I am very familiar with situations like the one ITT is in now. I know the risk." To Sutter, he wrote, "First of all I have been laid off 3 times in my career when economic times went south . . . so I am very familiar with the tendency to cut OP Ex to save money." However, Plaintiff alleges that the emails do not suffice as *proof* that he would have been laid off. He asserts that he was actually merely seeking time to spend with ailing family members, and posed the offer to cut hours as a compromise in order to seem unselfish. Defendant argues that Plaintiff's intentions do not matter, but merely his admission of the financial strain. They also point to deposition testimony, where Plaintiff seems to blame the

termination on the surveys that he mandated in 2014 to encourage employee morale but resulted in frustration. Again, the dispute results in a credibility assessment requiring a jury to weigh the pertinent facts.

Even if the Plaintiff has established the four required elements, an employer may avoid liability if it can prove "by clear and convincing evidence" that it "would have taken the same unfavorable personnel action in the absence of that [protected] behavior." *Allen*, 514 F.3d at 476 (citing 49 U.S.C. § 42121(b)(2)(B)(iv)). Here, Defendant produces its most poignant evidence in the form of an email from Vos, which contained a "first pass" of names included in the planned reduction in force. Plaintiff and Shirley's names were on the list. The email is dated September 2, 2015, five days before Plaintiff sent his emails acknowledging the economic difficulties and approximately one month before ITT began its investigation into the inventory transfers. Therefore, Defendant alleges that it intended to terminate Plaintiff before he reported the inventory moves.

While Defendants' evidence may suggest that it would have made the decision to fire Plaintiff even if he had not reported the alleged fraud, it does not amount to "clear and convincing" evidence as required by *Allen*. *Id*. Indeed, Defendants have not shown that the list was definitive regarding terminations, but rather that it was a "first pass." The "clear and convincing" evidence standard is even more stringent than that employers face in other employment discrimination cases. *Mahony v. KeySpan Corp.*, No. 04 CV 554 SJ, 2007 WL 805813, at *7 (E.D.N.Y. Mar. 12, 2007). There are simply too many factual disputes for the Court to conclude, as a matter of law, that Plaintiff would have been terminated even without protected activity.

*Conclusion*

For the reasons stated above, a reasonable jury could find that Plaintiff engaged in protected activity, that Defendants knew about his activity, that he suffered an adverse employment action, and that his termination was caused by his protected activity. Further, Defendant has not presented clear and convincing evidence that Plaintiff's termination would have occurred in the absence of his protected activity. Defendant's Motion for Summary Judgment [32] is DENIED.

SO ORDERED this the 12th day of February 2018.

 /s/ Sharion Aycock
UNITED STATES DISTRICT JUDGE